UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| KYLE DOMINIC STREET, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:24-cv-00121-MTS |
| | ) |
| ROY HINMAN, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

Before the Court on initial review pursuant to 28 U.S.C. § 1915(e)(2)(B) is self-represented prisoner Plaintiff Kyle Dominic Street's civil rights Complaint. Doc. [1]; *see also* 28 U.S.C. § 1915A(a). For the following reasons, the Court will issue process on the Complaint as to the three Defendants—Roy Hinman, Caitlin Douglas, and Garret A. Swims.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed without prepayment of fees if it is frivolous, malicious, or fails to state a claim on which relief may be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining

whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016).

## The Complaint

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging Defendants violated his constitutional rights by using excessive force against him on two separate occasions while he was housed at Southeast Correctional Center (SECC). He names as Defendants three correctional officers (COs) working at SECC who allegedly were involved in these incidents: Roy Hinman, Caitlin Douglas, and Garret Swims. He sues Defendants only in their individual capacities.

Plaintiff states that on May 19, 2023, on his way to the shower, he passed Defendant Swims, who allegedly told Plaintiff that he would "beat [Plaintiff's] ass," in a threatening diatribe permeated with racial slurs. Doc. [1] at 4. In response, Plaintiff mocked Swims by "making jokes" about him. Other inmates began laughing, and Plaintiff made another joke, this time about what he perceived to be Swims's sexuality. Plaintiff states that Swims then became hostile and twice sprayed Plaintiff with pepper spray. He then cuffed Plaintiff to a restraint bench. Plaintiff states he "began suffocating and became lightheaded because [he] could not breath[e]; as a result [he] passed out and fell off the bench, while still restrained to the bench." *Id.* Plaintiff states that he regained "semi-consciousness" when he heard the voice of Defendant Hinman. *Id.* at 5. Plaintiff states that at this point, while

still on the restraint bench, "out of nowhere for no reason [Hinman] pulled out a large cannister of MK9 (red pepper spray)," and Plaintiff "passed out from the lack of air." *Id.*

Months later, on December 17, 2023, during the evening shift, Plaintiff alleges Hinman walked past Plaintiff's cell and opened the food port. Hinman told Plaintiff, "Don't move from the door, cuff up, and don't flush the toilet." *Id.* Despite these clear instructions, Plaintiff states that he contravened them by going to his bunk to put on his shirt. In response, Plaintiff says Hinman sprayed pepper spray in his cell. Next, Hinman used his handheld radio to request assistance. Defendant Douglas responded to the call, and asked Plaintiff and his cellmate to cuff up. When Plaintiff walked to the food port to cuff up, he says Douglas "began obsessively macing [him] with a big cannister of mace." *Id.* Douglas "drenched" Plaintiff's "whole body." *Id.* Then, Plaintiff says, he and his cellmate were taken out of the cell to a different wing where Hinman had been working. Plaintiff states that Hinman and Douglas slammed his face against the entrance door several times. They then slammed Plaintiff to the ground several times.

Hinman then took Plaintiff to the strip-out cell. According to Plaintiff, Hinman told Plaintiff that the "mace [he] sprayed [Plaintiff] with, ha[d] [his] yellow ass red." *Id.* at 6. Hinman then allegedly threatened Plaintiff that if he moved, he would smash his face against the wall and break his arm. Staff called for a nurse, but Plaintiff states she only looked at him as if he were a "side show freak," and left without treating him. *Id.* Plaintiff says he sought to file an internal resolution request (IRR) and grievance but was not given the forms until January 09, 2024, which was after the time to file had passed. Plaintiff

inquired about his IRR months after he submitted it and alleges SECC staff told him that nobody had received it.

Plaintiff received a conduct violation arising out of the December 17, 2023, incident because "the above staff said that the deodorant that they [sell] us off of canteen has a 'foul smell.'" *Id.* at 7.  The conduct violation was later modified to creating a disturbance, and Plaintiff was found guilty and referred to administrative segregation.  Plaintiff states that as additional punishment, his property was confiscated and documented incorrectly.  He was later told that the "deodorant [was] tested in canteen, and they all tested positive of substances that they test for. All of those [conduct violations] for rule 11.45 on the deodorants are going to be dropped." *Id.* at 9.  Plaintiff states that there was no reason for any of the "seriously unprofessional conduct/events to have taken place at all resulting in [him] being injured."* *Id.*

For his injuries, Plaintiff states that he suffered severe chronic head pains, dizziness, and a large gash in the middle of his forehead.  For relief, plaintiff seeks actual damages of $100,000 and punitive damages of $2.1 million.  He also seeks "sanctions" against the prison staff and injunctive relief to "add cold water access to all showers." *Id.* at 11.

## Discussion

The Eighth Amendment forbids the "unnecessary and wanton infliction of pain" constituting cruel and unusual punishment. *Hudson v. McMillan*, 503 U.S. 1, 9–10 (1992);

---

* As best the Court can tell, it seems the incident on December 17, 2023, involved prison officials being suspicious of Plaintiff's deodorant.  As the Court understands, Plaintiff was charged with a conduct violation, which was later dropped after the deodorant was tested.

- 4 -

*see also Burns v. Eaton*, 752 F.3d 1136, 1138 (8th Cir. 2014) ("After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment."). When a prison official is accused of using excessive physical force in violation of the Eighth Amendment, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017); *see also Ward v. Smith*, 844 F.3d 717, 721 (8th Cir. 2016) ("Because the use of force is sometimes required in prison settings, guards are liable only if they are completely unjustified in using force, i.e., they are using it maliciously and sadistically"). The factors to be considered in determining whether force was used in good faith include "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted." *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

Viewing the factual allegations in the light most favorable to Plaintiff, as the Court must do at this stage of the case, the Court finds that Plaintiff has stated plausible claims of excessive use of force against Defendants Swims and Hinman arising out of the events on May 19, 2023, and against Defendants Hinman and Douglas arising out of the events on December 17, 2023. In both instances, the facts Plaintiff state plausibly allege he posed no physical threat to the officers. He alleges he was pepper sprayed without provocation twice on May 19, 2023—once while cuffed to a restraint bench—and pepper sprayed twice in his cell without provocation on December 17, 2023. He states he was then beaten by COs Hinman and Douglas. Because the Court finds Plaintiff has stated plausible claims of

excessive use of force in violation of the Eighth Amendment, it will issue process on Plaintiff's Complaint as to Defendants Hinman, Douglas, and Swims.

## Motions to Appoint Counsel

Plaintiff also has filed two motions to appoint counsel. Docs. [3] & [14]. The Court will deny the Motions at this time. A pro se civil litigant has neither a constitutional nor statutory right to appointed counsel. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013); *see also Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998). The fact that Plaintiff is incarcerated does not change that or confer some right to appointed counsel in civil matters. *See* M. Mushlin, 3 *Rights of Prisoners* § 12:24 (5th ed.) (explaining prisoners have no right to counsel, except in criminal cases, where a defendant is entitled, as a matter of right, to trial counsel and to appellate counsel for the first criminal appeal).

A district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim . . . and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018); *see also* 28 U.S.C. § 1915(e)(1). When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim. *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

After reviewing these factors, the Court finds that Plaintiff has not shown the appointment of counsel is presently warranted. Plaintiff has demonstrated that he can

adequately present his claims to the Court. Additionally, there is no complexity to this case. Factually, the case concerns events of which Plaintiff has personal knowledge. And legally, Eighth Amendment claims like this one are not at all complex; it will not be difficult for Plaintiff to establish an Eighth Amendment violation if, as alleged, he can prove that Defendants savagely beat him while he was handcuffed. *See Smith v. Mensinger*, 293 F.3d 641, 649 (3d Cir. 2002) ("Punching and kicking someone who is handcuffed behind his back . . . is 'repugnant to the conscience of mankind,' absent the extraordinary circumstances necessary to justify that kind of force.").

Accordingly,

**IT IS HEREBY ORDERED** that the Clerk of Court shall issue process or cause process to issue upon the Complaint, pursuant to the service agreement the Court maintains with the Missouri Attorney General's Office, as to Defendants Roy Hinman, Caitlin Douglas, and Garret A. Swims in their individual capacities.

**IT IS FURTHER ORDERED** that Plaintiff's Motions to Appoint, Doc. [3] & Doc. [14], are both **DENIED** without prejudice.

Dated this 21st of February 2025.

                                           MATTHEW T. SCHELP
                                           UNITED STATES DISTRICT JUDGE